Appellee Michael Benza Associates, Inc. ("Benza") sued Appellants Martin Herman and Joh-Mar, Inc. ("Joh-Mar") for payment of a debt for services rendered under a contract. The Cleveland Municipal Court ruled in favor of Benza and awarded $2,150 in damages, jointly and severally. Consequently, Herman and Joh-Mar appeal and assign the following two errors for our review:
 I. THE TRIAL COURT ERRED IN FINDING SURVEYOR HAD FULFILLED ITS CONTRACT WITH PROPERTY OWNER TO MODIFY EXISTING DRAWING OF THE BOUNDARY OF REAL PROPERTY.
 II. THE TRIAL COURT ERRED IN FINDING THE PRESIDENT OF THE CORPORATE DEFENDANT INDIVIDUALLY LIABLE FOR A ROUTINE DEBT OF THE CORPORATION.
Having reviewed the record and the legal arguments of the parties, we affirm in part and reverse in part the decision of the trial court. The apposite facts follow.
On February 22, 1996, Herman contacted Wheeler Melena, a division of Benza, to resurvey and reset pins along the westerly line of Joh-Mar's property. The next day on February 23, 1996, Benza sent a survey crew to perform the work requested.
A letter of confirmation, dated February, 22, 1996 and signed by Michael Benza, was sent to Herman. The confirmation letter reiterated Herman's telephone request, and stated that Benza would modify a previous drawing of the property lines, showing the new and reset pins. Per the letter, payment for the services totaled twenty-three hundred dollars. The letter also stated, "[b]y signing this letter, you agree to pay all charges not in dispute within 30 days of receipt of Wheeler Melena's invoice. * * * If this is a correct synopsis of our conversation, please sign the space provided below and return one signed copy to me. This will act as our authorization to proceed." Herman amended[1] and then signed the letter on February 29, 1996. Benza received the letter on March 5, 1996.
Benza subsequently submitted an invoice to Herman and Joh-Mar requesting payment. Herman and Joh-Mar refused to tender payment because they had not yet received the modified drawing. On August 29, 1996, Benza submitted the drawing and requested payment again. Again, Herman and Joh-Mar refused to tender payment, this time stating the drawing could not be read and was of poor quality.
On December 9, 1996, Benza filed suit in Cleveland Municipal Court against Herman and Joh-Mar, jointly and severally. The trial court ruled in favor of Benza, awarding two thousand one hundred fifty dollars with ten percent interest from August 26, 1996. This appeal followed.
In their first assignment of error, Herman and Joh-Mar argue Benza did not perform its obligation under the contract to modify the previous drawing. He maintains that the drawing was inadequate as it could not be read. Additionally, they argue the trial court incorrectly interpreted the meaning of "modify" in the contract.
It is a fundamental principle that "contracts are to be interpreted to carry out the intent of the parties, as that intent is evidenced by the contractual language." PharmaciaHepar, Inc. v. Franklin (1996), 111 Ohio App.3d 468, 475, citing Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53. The interpretation of a contract is a matter of law if the language is clear and unambiguous.Nationwide Mutual Fire Insurance Co. v. Gunman Brothers Farm
(1995), 73 Ohio St.3d 107, 108 [citing Inland Refuse TransferCo. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321,322). Thus, a trial court's interpretation requires a de novo review. Id. "The law favors an interpretation that gives a reasonable, lawful, and effective meaning to all manifestations of intent * * *." Linkey v. Medical College ofOhio (1997), 90 Ohio Misc.2d 15, [citing Restatement of the Law 2d, Contracts (1932) 327, Section 236(A)].
Herman and Joh-Mar claim the term "modify" is ambiguous. We disagree. The contract specifically stated, "[w]e will modify your previous drawing showing the new and reset pins." In her decision, Judge Kathleen A. Keogh stated:
 The Court also finds that the contract calls for, it does clearly state that we will modify your previous drawing showing the new and reset pins. In other words, the drawing is updated to reflect the location of the new pins and the distance between those pins as opposed to the distance between the old pins. And the Court finds that, that in fact, was done.
 A copy of this map may not be as clear as you would like it, but it is clear to this court where the new pins were located now and where the old pins were located. * * * The court finds that you can spot where the pin is in a little offset area on this map which makes the congestive (sic) area more clearer and more detailed. Both the contract was fulfilled and the work was done; * * *.
(Tr. 91-92.)
Herman and Joh-Mar argue that the purpose of the drawing was to have one source of reference to locate the property boundaries. They contend the modified drawing cannot be read without referring to the previous drawing; thus Benza did not fulfill its contractual obligation. Herman and Joh-Mar essentially argue there is ambiguity regarding the number of drawings required by contract. We disagree.
The language of the contract is clear and unambiguous. The contract merely required that a drawing be produced showing the new and old pins. This was done. Even Herman and Joh-Mar agree that this was done. Despite their argument, they concede, "[t]here never was a suggestion that Benza was to make a complete new drawing. Benza was to add the reset pins to the existing drawing. The obvious intention of the parties, and therefore of the contract, is for Joh-Mar to have a drawing equivalent to the original drawing with the relocated pins shown." (Appellants Brief p. 4)
We reviewed the modified drawing and came to the same conclusion as the trial court: the location and distance of both the old and reset pins are readable. Therefore, it is our determination that the modified drawing complies with the contract. Consequently, the first assignment of error is overruled.
In his second assignment of error, Herman argues the trial court improperly held him individually liable for a corporate debt. He argues he cannot be held personally liable because he acted in his representative capacity.
"An officer of a corporation is not personally liable on contracts * * * for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual." Centennial Ins. Co. Of New York v. Vic TannyInternat'l. Of Toledo, Inc. (1975), 46 Ohio App.2d 137, 142;Spicer v. James (1985), 21 Ohio App.3d 222; Hommel v. Micco
(1991), 76 Ohio App.3d 690, 697; and Heritage Funding LeasingCo. v. Phee (1997), 120 Ohio App.3d 422. Whether or not a corporate officer can be held personally liable depends upon "the form of the promise and the form of the signature."Spicer, supra at 223. If there is a question as to whether or not a person signed a contract in an individual or corporate capacity, parol evidence is admissible to show representative capacity. Wise v. Duker (1988), 57 Ohio App.3d 62, 63.
From this record, the only evidence we can glean that the trial court relied upon to find Herman Martin liable was the fact that he signed the confirmation letter in his name and not as president of the company. The query for us is whether this signature manifestly established Herman Martin's individual liability. We conclude it did not. The weight of the evidence showed that Benza knew from past dealings with Joh-Mar, Inc. that Herman Martin was its president. The trial judge on the record acknowledged that Benza had on previous occasions dealt with Herman Martin in his capacity as president of Joh-Mar, Inc. Additionally, when Benza sued, its complaint identified Herman Martin as President of Joh-Mar, Inc., and Benza addressed its payment invoice to Joh-Mar, Inc. Accordingly, appellant's second assigned error is sustained.
Judgment affirmed in part and reversed in part.
This cause is affirmed in part and reversed in part.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, J., and TIMOTHY E. McMONAGLE, J., CONCUR.
 _______________________________ PATRICIA ANN BLACKMON ADMINISTRATIVE JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App. R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Six pins were to be reset at a lump sum of $2300. Only five pins were actually reset. Herman amended the contract to reflect the accurate number of pins and deducted $150, the cost of each pin.